FILED

2026 Feb-17  PM 04:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ROBERT TAYLOR,                        )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )    Case No.  5:23-cv-01432-HNJ
                                      )
DANIEL P. DRISCOL, Secretary,         )
Department of the Army, et al.,       )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Robert Taylor asserts claims against his employer, the Department

of the Army and the Secretary of the Army, pursuant to Title VII of the Civil Rights

Act of 1964 (Title VII) and 42 U.S.C. § 1981, for retaliation, disparate treatment, and

race discrimination.  (Doc. 1).  On March 20, 2025, Taylor filed a motion pursuant to

Federal Rule of Civil Procedure 37 to impose sanctions on Defendants for submitting

false and misleading information to the court.  (Doc. 37).

      Taylor contended Joseph Giunta, a high-level Army official, rendered false

statements regarding the following matters:  Taylor's eligibility for promotion to a

Technical Director position; Giunta's questioning why certain employees could no

longer perform the work they love; the need for additional contracting specialist

positions within Giunta's organization; whether a prohibition existed for hiring Black

or White employees; whether Giunta and his team visited Predominantly White

Institutions to recruit new employees; the appropriate job description for Taylor's position as Supervisory Management Analyst or Supervisory Logistics Management; the number of announcements for a Supervisory Human Resources position; whether preselection and favoritism resulted in the hiring of Jennifer McKinzey rather than Taylor; and the racial demographic of supervisory positions reporting to Daniel Cottrell.

Taylor asserted:

> In light of the Defendant's repeated misrepresentations, deliberate evasions, and discriminatory practices, it is evident that the integrity of the judicial process has been undermined. The Defendant's actions not only violate procedural and ethical standards but also perpetuate systemic inequities that this Court is duty-bound to address. The Plaintiff has presented compelling evidence of misconduct, including the Defendant's failure to uphold candor, integrity, and fairness in hiring practices. These actions warrant the imposition of appropriate sanctions to restore justice, deter future misconduct, and reaffirm the principles of equality and accountability.

(*Id.* at 23).

During an April 3, 2025, hearing, the court instructed Taylor that, to the extent he desired to challenge the accuracy of any facts the Army raised in its motion for summary judgment, he should do so in response to the motion for summary judgment rather than in a motion for sanctions. The court also informed Taylor he would need to provide evidence, not just conclusory allegations, of any misstatements, and only evidence about the employment decisions he challenged in his EEO filings and judicial complaint would bear relevance to his claims. The court denied Taylor's motion for

sanctions that same day.  (Doc. 41).

The court also issued an order pursuant to *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), detailing Taylor's responsibilities for responding to the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 42).

On April 14, 2025, Taylor moved for reconsideration of the April 3, 2025, order denying his motion for sanctions.  (Doc. 43).  He filed an evidentiary submission in support of his motion for reconsideration and additional argument in support of his request for sanctions.   (Doc. 45).   This opinion addresses the motion for reconsideration.

A district court possesses "plenary authority 'to reconsider, revise, alter or amend' a non-final order before the entry of final judgment." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1380 (11th Cir. 2024) (citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000); *Hardin v. Hayes*, 52 F.3d 934, 938 (11th Cir. 1995)).  Even so, the court "need not employ plenary *review*" on reconsideration.  *Id.* (emphasis in original).  "Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution."  *Id.* (citing *United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984); *Ins. Grp. Comm. v. Denver & Rio Grande W. R.R. Co.*, 329 U.S. 607, 612 (1947)).

A district court's discretion in these matters is governed by the law-

3

of-the-case doctrine, which in this context functions as a guide for courts rather than "a limit to their power." *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-17, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988). Operating with more or less force depending on the stage of litigation, the doctrine as a whole "expresses the practice of courts generally to refuse to reopen what has been decided." *Id.* at 817, 108 S. Ct. 2166 (quotation omitted). So district courts should gently keep in mind the general point that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S. Ct. 1382, 75 L. Ed. 2d 318 (1983). "Common sense, not a rigid set of rules," governs when there is no higher court mandate. 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.21[1] (3d ed. June 2024 update); *see also White v. Murtha*, 377 F.2d 428, 431-32 (5th Cir. 1967).

*Hornady*, 118 F.4th at 1380-81.

Taylor has presented no argument that persuades the court to reconsider its prior order. He seeks sanctions pursuant to Federal Rule of Civil Procedure 37 and the court's inherent power to "impose sanctions for contempt of court or failure to comply with procedural rules." (Doc. 45, at 4). His motion addresses

multiple instances of misrepresentation under oath by Defendant Joseph Giunta, which directly contradicts the documented evidence, and depositions of other individuals involved. These violations fundamentally undermine the integrity of judicial proceedings and demand the utmost scrutiny. This case further illustrates a series of false statements and misleading actions by Defendant Joseph Giunta, as well as other involved parties, which not only contradict documented evidence but also highlight deliberate attempts to conceal the truth, perpetuate inequality, and hinder the Plaintiff.

(*Id.* at 5).

Specifically, Taylor asserts:

4

- "On October 21, 2025, Defendant Joseph Giunta denied under oath stating Plaintiff's position was not the only non-1102 series position that was not offered an opportunity to be considered at the full performance GS-15, step 10 level, as a Technical Director." (*Id.* at 5).

- "On October 21, 2025, Defendant Joseph Giunta stated, under oath, in three separate answers and responses that the organization conducts a Workforce Readiness Assessment (WRA) on an annual basis." (*Id.* at 6).

- "On October 21, 2025, Defendant Joseph Giunta denied under oath by stating he did not indicate to Plaintiff that his position was or would be considered or discussed to be at the full performance GS-15, step 10 level as a Technical Director position." (*Id.* at 7).

- "On October 21, 2025, during a deposition, Attorney Annette Perry emailed Attorney Don Long providing misleading information as Defendant Joseph Giunta['s] email to Plaintiff contradicts with what Defendant Daniel Cottrell provided." (*Id.* at 8).

- "On October 21, 2025, Defendant Joseph Giunta denied under oath that he (Joseph Giunta) never stated on more than one occasion, 'we do not have a hold for hiring Black or White employees.'" (Doc. 45, at 9).

5

- "On October 21, 2025, Defendant Joseph Giunta denied under oath stating that COL William Trimble made the decision to move plaintiff when in fact, the decision was made pretext, that the Plaintiff was not going to return to his position of record." (*Id.*).

- "On February 25, 21 [*sic*], under the Perjury of Penalties [*sic*] document signed by Defendant Joseph Giunta stated he does not think that it is true that the decision was made before Plaintiff was interviewed for his position of record that Plaintiff would not return to his position." (*Id.* at 10).

- "On October 21, 2025, Defendant Joseph Giunta denied under oath when asked by Plaintiff, how many employees in the organization can do what they love instead of what their supervisor wants them to do.  Instead he said, 'I don't know how to answer that question, hoped that every employee enjoyed their job.'" (*Id.* at 10-11).

As sanctions, Taylor requests monetary fines, suspension or removal of Giunta from his position, mandatory training, a public apology, and enhanced oversight to monitor the organization's compliance with legal and ethical standards.  (*Id.* at 20-21).[1]

---

[1] The court observes the statements Taylor challenges do not bear relevance to the claims he asserts in this case, which rest only upon his non-selection for the Supervisory Logistics Management Specialist position; his August 4, 2020, management directed reassignment; and the delay in restoring his annual leave.  (*See* Doc. 1).

Rule 37 permits a court to impose sanctions for a party's failure to comply with a court order, make or supplement required disclosures, admit matters pursuant to Federal Rule of Civil Procedure 36, attend its own deposition, serve answers to interrogatories, respond to a request for inspection, preserve electronically stored information, or participate in a discovery plan. *See* Fed. R. Civ. P. 37(b)-(e). As an initial matter, Taylor did not name Giunta as an individual defendant, so Giunta does not constitute a party to this action. Moreover, Taylor has not alleged the Defendants or any of their agents engaged in any of the conduct for which Rule 37 permits an award of sanctions. Therefore, the court will not awards sanctions pursuant to Rule 37.

A district court also possesses "'the inherent authority to issue sanctions as a punishment for bad-faith behavior in the proceedings before [it].'" *Whitesell Corp. v. Electrolux Home Prods., Inc.*, 154 F.4th 1289, 1299 (11th Cir. 2025) (quoting *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1304 (11th Cir. 2020)). The sanctions power serves the "dual purpose . . . to vindicate judicial authority and to make the prevailing party whole." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340, 1346 (11th Cir. 2024) (citing *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1222 (11th Cir. 2017)) (cleaned up). A finding of bad faith constitutes the "'key to unlocking' that power." *Id.* (citing *Purchasing Power*, 851 F.3d at 1223). The offending party's bad faith must manifest subjectively, indicating "intentional and not just reckless behavior." *Id.* (citing *Purchasing Power*, 851 F.3d at 1224-25).

A review of the contested statements portray they do not establish bad faith conduct warranting the imposition of sanctions. The Eleventh Circuit maintains that

> false statements alone do not indicate bad faith. Without a "smoking gun" statement from the plaintiff, i.e., "I know my claim is frivolous and I am pursuing this claim to harass the defendants," a district court makes a determination of bad faith by drawing inferences from the conduct before it. Standing alone, a false or inconsistent statement in a deposition does not compel the conclusion of bad faith. A false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose.

*Byrne v. Nezhat*, 261 F.3d 1075, 1125 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011); *see also Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-3129-CAP, 2022 WL 17828934, at *108 (N.D. Ga. Dec. 15, 2022) (citing *Purchasing Power*, 851 F.3d at 1225; *Strang v. Albany Georgia*, 759 F. App'x 755, 759 (11th Cir. 2018) (contrasting bad faith misrepresentations "with simple recklessness or inconsistencies in a witness' testimony, which can be a starting point but standing alone are insufficient to make the finding of bad faith necessary to impose sanctions"); *Tarasewicz v. Royal Caribbean Cruises Ltd.*, No. 14-CIV-60885, 2016 WL 3944176, at *6 (S.D. Fla. Feb. 9, 2016), *report and recommendation adopted*, No. 14-CIV-60885, 2016 WL 3944178 (S.D. Fla. Mar. 17, 2016) (citations omitted) ("[T]he fact that Plaintiff made inconsistent statements does not automatically lead to the conclusion that he committed a fraud on the court.").

The court does not construe Guinta's testimony as presenting the inconsistencies Taylor suggests.   For example, Taylor references Guinta's deposition testimony regarding Workforce Readiness Assessments [WRA's]:

A. . . . And the staff structure is a constant review does it meet the needs of the organization from a supporting perspective of our execution mission.  So it's not over.  Right?  We look at our structure all the time.  We do it on an annual basis as part of our WRA, and have for the last three years.  So I'm not sure your thought is correct.

. . . .

A. Yeah.  As I referred back to the previous answer. Robert, every position on the staff, to include execution across the center, is considered in terms of a structured change based on our ability to meet mission. Right?

So in the case of Technical Directors, we have converted some, but we are still looking at the staff, as we always do as part of the WRA, on whether or not we will transition positions in the future.

So there is not – there has been no definite decision on whether your position would or would not be transferred or converted in the future.  Your position, as well as other positions, could be restructured at any point during our mission requirements.

. . .

We have created some of those positions as full performance.  Two of them have been filled as Tech Directors.  Both of them are 301 PDs. You could have competed.  There could be more.  I don't know yet.  It's part of our WRA and our constant look at the structure.  We just can't create full performance positions just to create them.  There has to be a mission need for those positions to be established.

(Doc. 45-1, at 7, 9-11).

9

Taylor argues Giunta's testimony that the organization conducts a WRA annually contradicts April 1, 2025, and April 3, 2025, emails authored by Deisy D'Ambrosio in the Special Projects Group; D'Ambrosio remarked that while the Business Management CONOPS Directorate (in which Taylor worked) had undergone Phases I and II of the WRA in past years, the Directorate would undergo Phase III of the WRA for the first time in Fiscal Year 2025. As of the date of the emails, the Directorate had not completed Phase III. (Doc. 45-11, at 1-4).

The foregoing review reveals Giunta's testimony does not inherently contradict the April 2025 emails. Giunta testified the organization had conducted a WRA the previous three years, and D'Ambrosio's emails confirm that testimony by stating the organization had undergone Phases I and II of the WRA in past years. As Giunta's testimony did not specifically address Phase III, it cannot contradict the statements in D'Ambrosio's emails about Phase III.

As an additional example, Taylor contends:

> On October 21, 2025, during a deposition,[2] Attorney Annette Perry emailed Attorney Don Long providing misleading information as Defendant Joseph Giunta [*sic*] email to Plaintiff contradicts with what Defendant Daniel Cottrell provided. See Ex. 3, where the Defendant Daniel Cottrell email provided to Attorney Annette Perry is misleading, deceiving and concealing critical information as the information does not present the entire email chain. Email from Defendant Daniel Cottrell, provided to Attorney Annette Perry, does not include the thorough

---

[2] Taylor references Giunta's February 25, 2021, sworn written responses to questions during the internal EEO investigation process, not the deposition Giunta gave in this case. (*See* Doc. 45-3, at 1).

electronic message and provides unreliable and misleading genuine issues of material facts. See Ex. 12.

(Doc. 45, at 8-9).

On October 21, 2024, Annette Perry, an attorney in the Litigation Division of the U.S. Army Legal Services Agency, forwarded an email chain to Don Long, the Assistant United States Attorney handling this case. The chain originated with a March 22, 2024, email from Giunta regarding a Business Management Directorate Restructure. Taylor filed two copies of the email as exhibits in this action. (Doc. 45-3, at 3-5; Doc. 45-12, at 3-4). One copy omits two lines of redacted text in Perry's email to Long, which Defendants describe as "attorney-to-attorney communication between [Long] and agency counsel . . ., which has been redacted as protected by attorney-client privilege." (Doc. 51, at 5). There exists no inherent contradiction with any statement uttered by Giunta.

As another example, Taylor points to the following deposition testimony from Giunta:

> Q. . . . How many employees in the organization that can do what they love instead of what their supervisor want[s] them to do?

> A. I don't understand –

> MR. LONG: Object to the form.

> You can answer, Mr. Giunta, if you know the answer to that.

> A.   I hope every employee loves their job.  I don't know how to answer that question.  I'm hoping that all my employees are satisfied with their positions, leadership roles.  I don't know how to answer that any differently than that.  Over.

(Doc. 45-1, at 18).  Taylor asserts that testimony contradicts a January 29, 2024, from Daniel Cottrell, to Taylor, whereby Cottrell raised questions about system requirements for an employee named Keith because Cottrell "had a note from the DCG asking me why Keith no longer had access he previously enjoyed and what was going on."  (Doc. 45-10, at 2).

The court disagrees.  During his deposition, Giunta responded to a question from Taylor about employees subjectively enjoying, as in experiencing joy from, their job duties, and he offered only his opinion about how he would like for employees to enjoy their jobs.  In contrast, the email references an employee's access to certain work systems, and it uses the term "enjoyed" in the sense that the employee previously possessed the ability to access certain systems.  The two statements present no inherent contradiction.

As these examples depict, Giunta's declarations do not induce the conniving contradictions Taylor insinuates.  However, even if Giunta's testimony presented inconsistencies, the record contains no additional evidence indicating Giunta rendered statements for a harassing or frivolous purpose.  Therefore, no basis exists for imposing sanctions pursuant to the court's inherent power.

12

As no basis exists for imposing sanctions pursuant to either Federal Rule of Civil Procedure 37 or the court's inherent power, the court **DENIES** Taylor's motion for reconsideration of its previous order denying sanctions.

**DONE** and **ORDERED** this 17th day of February, 2026.

_____
HERMAN N. JOHNSON, JR.
vUNITED STATES MAGISTRATE
JUDGE