FILED

2026 Feb-17  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:23-cv-01432-HNJ |
| | ) | |
| DANIEL P. DRISCOL, Secretary, | ) | |
| Department of the Army, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 23, 2023, Plaintiff Robert Taylor, a Black man who proceeds *pro se*, filed this action against his employer, the Department of the Army, as well as the Secretary of the Army, pursuant to Title VII of the Civil Rights Act of 1964 (Title VII) and 42 U.S.C. § 1981, for retaliation, disparate treatment, and race discrimination.  (Doc. 1).  On March 14, 2025, Defendants filed a motion for summary judgment.  (Doc. 34). On March 31, 2025, Taylor filed a "Motion to Deny Defendant's Summary Judgement Based on Defendant Misleading the Court Under Oath."  (Doc. 40).  On May 12, 2025, Taylor filed a "Motion Against Defendant [sic] Summary Judgment Motion Based on Genuine Issues of Material Facts."  (Doc. 52).  On May 30, 2025, Taylor filed a motion to file a supplemental pleading in opposition to Defendants' motion for summary judgment (Doc. 62) and a supplemental evidentiary submission.  (Doc. 63).

As elaborated herein, the court finds Taylor cannot proceed under 42 U.S.C. § 1981 as he sues only federal Defendants; the Department of the Army does not constitute a proper Defendant to Taylor's Title VII claims; res judicata bars any claims based upon the denial of adequate resources prior to September 3, 2019, or upon Taylor's September 3, 2019, reassignment; and no reasonable jury may find in Taylor's favor as to his Title VII claims for retaliation and race discrimination against the Secretary of the Army.  Accordingly, the court will **GRANT** Defendants' motion for summary judgment.

## PREVIOUS PROCEEDINGS IN CIVIL ACTION NO. 5:22-CV-01350-HNJ

On November 20, 2019, Taylor filed a formal complaint of discrimination with the Army's EEO Office.  (Doc. 33-21).  He alleged race, color, sex, age, national origin, religion, and disability discrimination based on the following actions:

> I.  I was treated unfairly on 3 September 2019 when I was removed from my position of record as a Supervisory Management Analyst position (NN-343-04) to a non-supervisory Operations Officer position (GS-301-14) while Mr. John Mayes, Ms. Janet Guyette and Mr. Dale Smith, who are all white, were under investigations, and remained in their position of record as NH-04 in the same office without moving.  Ms. Jody Byrd (white) arrested (at least twice for stealing) remained in her position of record as a non-supervisor.

> II.  I was treated unfair [*sic*] when at 1630 on 3 September 2019 I was not given proper time to clean out my office to move to cubical space while Mr. Mayes, Ms. Guyette and Mr. Smith (all white) were not moved when they were under investigation.

2

III.  I was treated unfair [*sic*] when a younger black employee with no visible disability issues replaced me during the investigation. (Disability/age discrimination).

IV.  All of the above created a hostile work environment in [sic] which has made it almost impossible to work in.

(*Id.* at 1).

On October 21, 2022, after the Army's EEO Office completed its internal investigatory process, Taylor filed an action in this court against the Army for race-based disparate treatment, race discrimination, and retaliation pursuant to Title VII. Complaint, *Taylor v. Department of the Army*, No. 5:22-cv-01350-HNJ (N.D. Ala. Oct. 21, 2022), ECF No. 1.  On July 8, 2024, the undersigned granted the Army's motion for summary judgment on all those claims.

As to Taylor's claim that the Army discriminatorily denied him adequate resources to perform his job duties, the undersigned granted summary judgment as no record evidence demonstrated the Army treated similarly situated White comparators more favorably; Taylor's work unit received additional employees under subsequent Black supervisors; and no record evidence demonstrated the Army generally treated White employees favorably while treating Black employees unfavorably.

As to Taylor's claim that the Army discriminated against him based upon his race when it detailed him from the position of Supervisory Management Analyst to the position of Strategic Planning Officer on September 3, 2019, the undersigned granted

3

summary judgment as a Black employee replaced Taylor in the position of Supervisory Management Analyst; no evidence existed that the Army treated similarly situated non-Black employees more favorably; and no evidence existed that racial animus motivated any efforts by the Army to interfere with Taylor's success in his role.

As to Taylor's retaliation claim, the undersigned granted summary judgment as no evidence supported a connection between Taylor's support of other employees' race discrimination claims and the Army's alleged efforts to sabotage his success and reassign him to a less favorable position. Moreover, no evidence existed that the decisionmaker for the reassignment decision knew about Taylor's protected activity, and no other evidence existed that retaliation tainted the decision process.[1] Memorandum Opinion and Order, *Taylor v. Department of the Army*, No. 5:22-cv-01350-HNJ (N.D. Ala. July 8, 2024), ECF No. 51.

## PROCEDURAL HISTORY OF THE INSTANT CASE

On August 10, 2020, Taylor initiated contact with the Army's EEO Office regarding new complaints of discrimination, and he filed a formal EEO complaint on October 5, 2020. (Doc. 33-22). Taylor indicated on the complaint form that he asserted discrimination based upon his race (African-American), color (Black), sex (Male), age

---

[1] Taylor appealed the order granting the Army's motion for summary judgment (Civil Action No. 5:22-cv-01350-HNJ, Doc. 53), but the Eleventh Circuit dismissed the appeal for want of prosecution. (*Id.*, Doc. 58).

(57), disability (anxiety and difficulty walking), and reprisal ("Discrimination20Nov19RightoFile").  He stated:

> I.  I was treated unfairly on August 5, 2020 after, [*sic*] I was notified I was not selected for my position of record as retaliation due to filing an EEO complaint previously.  My position of record was announced April 1, 2020; I had to apply for my own position.

> II.  I was treated unfairly by retaliation consisting of denial and refusal to be hired for the same level position I was previously assigned to; instead I was assigned to a lower level position with control points effective September 20, 2020[,] which is essentially a demotion with respect to compensation, terms, conditions and privileges of employment.

> III.  I was treated unfairly on August 4, 2020[,] when I received a management directed memorandum giving me 10 calendar days to respond.  There were and are two options to choose from, either accept the Management Directed Reassignment or be subject to removal from Federal Service.  Yes, this is normal by OPM guidelines.  Nevertheless, the memorandum serves as retaliation based on the position type compared to other non 1102 positions within the Agency; this adversely affects my status and illustrates from the Agency that I did something wrong.  BUT for the Agency not providing the required requested resources identified in specific details, we would not be in this situation today.

(*Id.* at 1) (capitalization in original).  He requested $300,000 in compensatory damages, attorney's fees, "assign[ment] to a position of increased responsibility and or at the same level of my position of record and or positions other non 1102s are assigned," "[r]eimburse[ment] for all used sick days and leave days that I was unable to enjoy as desired," and provision of "training programs within the organization to ensure all people are treated the same and hold those accountable that violates [*sic*] the law without

delay." (*Id.* at 2).

On October 19, 2020, the Army's EEO office accepted Taylor's complaint for investigation on the following claims:

> discrimination on the basis of his race (African American), color (Dark-skinned), age (XX), sex (Male), disability (mental and physical), and reprisal (Prior EEO Activity: ARREDSTON19SEP03724) in the following actions when:
>
> a. On 05 August 2020, he was not selected for the position of Supervisory Logistics Management Specialist, NH-036-04, by Mr. Joseph Giunta, Senior Executive Director Army Contracting Command (ACC), race (White), color (White), age (XX), sex (Male), disability (Unknown) and reprisal (aware).
>
> b. On 04 August 2020, he received a management directed reassignment notice dated 28 July 2020, via the United States Postal Service, signed by LTC Tangela Robinson, Post Award Division Deputy ACC, race (Black), age (XX), sex (Female), disability (Unknown) and reprisal (unaware).

(Doc. 33-23, at 1).

The October 19, 2020, notice further stated:

> If you believe the claim in this complaint has not been correctly identified, please notify me, in writing, within 5 calendar days after you receive this letter, and specify why you believe the claim has not been correctly identified. If you fail to contact me, I will conclude you agree that the claim has been properly identified above.

(*Id.*).

On December 13, 2021, an Administrative Judge (AJ) issued a decision in favor of the Army, and Taylor appealed to the United States Equal Employment Opportunity

6

Commission, Office of Federal Operations, which issued a final decision upholding the

AJ's decision on July 26, 2023.  (Doc. 1, at 27-33).  The decision stated that it addressed

the following claims:

> 1.    on August 5, 2020, [Taylor] was not selected for the position of Supervisory Logistics Management Specialist, NH-0346-04, by Senior Executive Director (Director), of the Agency's Contracting Command; and
>
> 2.    on August 4, 2020, Complainant received a management directed reassignment notice dated July 28, 2020, via the U.S. Postal Service, signed by Lieutenant, Post Award Division Deputy, Contracting Command.

(*Id.* at 28).

On October 23, 2023, Taylor filed the instant Complaint with this court.  He

asserts six causes of action: (1) "Retaliation in Violation of Title VII"; (2) "Retaliation

in Violation of 42 U.S.C. § 1981"; (3) "Disparity Treatment in Violation of Title VII";

(4) "Disparity Treatment in Violation of 42 U.S.C. § 1981"; (5) "Racial Discrimination

in Violation of Title VII"; and (6) "Racial Discrimination Violation of 42 U.S.C. §

1981."  (Doc. 1, at 15-22).

## SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  The

"party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant sustains its burden, a non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable factfinder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted). The non-movant sustains this burden by demonstrating "that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). In the alternative, the non-movant may "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116-17; *see also Doe v. Drummond Co.*, 782 F.3d 576, 603-04 (11th Cir. 2015), *cert. denied*, 577 U.S. 1139 (2016).

The "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151 (citation omitted).  "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* (citation omitted).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.  In addition, a movant may prevail on summary judgment by submitting evidence "*negating* [an] opponent's claim," that is, by producing materials disproving an essential element of a non-movant's claim or defense.  *Id.* at 323 (emphasis in original).

There exists no issue for trial unless the nonmoving party submits evidence sufficient to merit a jury verdict in its favor; if the evidence is merely colorable or is not significantly probative, the court may grant summary judgment.  *Anderson*, 477 U.S. at

249-50.  The movant merits summary judgment if the governing law on the claims or defenses commands one reasonable conclusion, *id.* at 250, but the court should deny summary judgment if reasonable jurors "could return a verdict for the nonmoving party."  *Id.* at 248.  That is, a court should preserve a case for trial if there exists "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249.

## FACTUAL FINDINGS RELEVANT TO MOTION FOR SUMMARY JUDGMENT

## I.    FACTS RELATED TO TAYLOR'S NON-SELECTION FOR THE SUPERVISORY LOGISTICS MANAGEMENT SPECIALIST POSITION IN 2020

On April 1, 2020, the Army posted an announcement for a Supervisory Logistics Management Specialist position.  (Doc. 33-5).  Taylor and 61 other individuals applied for the position.  (Doc. 33-6; Doc. 33-7).  To assess the applicants, the Army formed a panel comprised of Daniel Cottrell, a White male; Lynda Armer, a White female; Phillip McDonald, a White male; and Vincent Hunter, a Black male.  (Doc. 33-8, at 6).  Cottrell served as the panel lead, but he did not rate or vote on applicants.  (Doc. 33-9, at 10).

The panel's evaluation of each applicant's resume constituted 35% of the applicant's overall application score, and the evaluation of an applicant's interview performance constituted 65% of the overall score.  (Doc. 33-7, at 1).  The panel rated each applicant's resume in the following areas: (1) facility supply inventory management;

(2) leadership; (3) supply support; and (4) supply equipment. (Doc. 33-10). The panel averaged together the resume scores from each voting panel member to create a resume score for each applicant. (Doc. 33-7, at 1; Doc. 33-11).[2] Taylor received a total weighted resume score of 18.67, placing him within the top seven resume scores among applicants.

The top seven applicants received an interview. (Doc. 33-7, at 1). The panel conducted interviews by telephone. "Each candidate was asked the same five questions and all questions were read by the Panel Lead and no elaboration to the questions was made. Only restating the question to the applicant was done, if there was a question regarding the content of the interview question." (*Id.* at 2). After each interview, the panel members "deliberated to reach a 'real-time' consensus on the point totals for each Applicant's interview performance." (*Id.*). The panel members assigned points based upon the following scale:

> **60 Points**: Applicant's response[s] are well-organized and presented with a high degree of confidence, clarity, and conciseness. Applicant fully addressed the interview questions with highly thoughtful, logical, and relevant responses. When required, applicant supported responses with detailed ideas, solutions, and/or examples.

> **40 Points**: Applicant's responses are generally organized and presented with a reasonable degree of confidence, clarity, and conciseness. Applicant addressed the interview questions with generally thoughtful,

---

[2] The weighted resume score represented the average of the panel members' resume scores, weighted at 35% of the total application score.

logical, and relevant responses. When required, applicant supported responses with general ideas, solutions, and/or examples.

**20 Points**: Applicant responses lack some organization and are presented with minimal confidence, clarity, and conciseness. Applicant addressed the interview questions with minimal thoughtful, logical, and relevant responses. When required, applicant supported responses with few ideas, solutions, and/or examples.

**0 Points**: Applicant responses are fragmented and are presented with little or no confidence, clarity, and conciseness. Applicant's responses to interview questions were vague and lacked thoughtful, logical, and relevant responses. When required, applicant did not support responses with adequate ideas, solutions, and/or examples.

(Doc. 33-12, at 1).

Taylor received a total weighted interview score of 19.50,[3] the lowest score of all seven interviewees. The other interviewees received scores of 35.75, 33.80, 32.50, 32.50, 26.00, and 22.75. (Doc. 33-7, at 2). One of the interviewers, Lynda Armer, remarked Taylor presented as highly qualified, but "he didn't do as well" on the interview. "He provided limited examples[,] was hard to follow[, and] jumped around a lot." (Doc. 33-13, at 7).

The panel added Taylor's total weighted resume score (18.67) to his total weighted interview score (19.50) to reach a total overall weighted score of 38.17, the lowest overall score among the interviewees. The other interviewees received total

---

[3] The weighted interview score represented the average of the panel members' interview scores, weighted at 65% of the total application score.

overall weighted scores of 54.42, 52.92, 51.88, 51.17, 45.25, and 40.83. The individual who received the highest, total overall weighted score did not receive the position because his reference checks – which the panel requested for all interviewees – raised significant concerns about his ability to perform the job. Rather, Dale Aaknes, a White male and the individual who received the second-highest total, overall weighted score, received the position as his references provided positive feedback. (Doc. 33-7, at 3). Taylor received an email on August 5, 2020, informing him he did not receive the position. (Doc. 33-6).

Voting panel members Armer, Hutner, and McDonald all attested they did not know of Taylor's race, skin color, or prior protected activity when they rated his resume and interview. (Doc. 33-13, at 2-4; Doc. 33-14, at 2, 4; Doc. 33-15, at 2-3, 4). Stephen Hayes served as the Selecting Official for the position. He bore responsibility for "approving the selection panel, approving panel members, concurring in selection of interview candidates based on resume evaluation results, developing/approving interview questions, and making the selection decision based upon total evaluation results." (Doc. 33-8, at 5). Hayes did not interview any candidates; rather, he relied upon the interviews and evaluations the panel members conducted. (*Id.* at 10). Hayes knew Taylor's race at the time of the selection decision, but he did not know Taylor had engaged in prior protected activity. (*Id.* at 4-5).

II.    **FACTS RELATED TO THE SEPTEMBER 12, 2020, MANAGEMENT DIRECTED REASSIGNMENT**

On August 11, 2013, Taylor assumed the position of Supervisory Management Analyst for the Army Contracting Command at Redstone Arsenal in Huntsville, Alabama. (Doc. 33-1). Approximately every two months between April 2017 and July 2019, Taylor requested additional human resources he perceived as necessary for his department to properly perform its functions. No one granted his requests. (Doc. 33-2, at 5-7).

On September 3, 2019, the Army detailed Taylor to a Strategic Planning Officer position pending a property loss investigation in the department where he served in his former position. In his new position, Taylor reported to Daniel Cottrell, Chief Contracting Operations. Colonel William Trimble signed the detail notice. (Doc. 33-2, at 3-4; Doc. 33-3). Joseph Giunta, the Executive Director of the Army Contracting Command, concurred in Trimble's decision. (Doc. 33-4, at 5).

On February 20, 2020, an investigator issued findings and recommendations regarding the property loss investigation in the department where Taylor served in his former position. (Doc. 33-16). The investigator concluded:

> The proximate cause of the [property] loss is Dr. Robert Taylor's failure to effectively execute his direct and supervisory responsibilities . . . and his failure to act as a prudent person. These failures constitute his individual and simple negligence. I do not find evidence of willful or collective negligence as the proximate cause of loss.

14

(*Id.* at 2-3).    The investigator recommended forwarding the report to Taylor's "supervisor with a recommendation to consider administrative disciplinary action." (*Id.* at 10).

On April 14, 2020, Bryan R. Samson, Deputy to the Commanding General of the U.S. Army Contracting Command, issued a Memorandum for Record closing out the property loss investigation.  (Doc. 33-17).  Samson concluded Taylor "did not execute his property accountability and hand-receipt responsibilities properly." (*Id.* at 1).  Even so, Samson decided not to hold Taylor financially liable for the lost property, as property management did not directly fall under Taylor's job description, Taylor's supervisors did not engage with him to ensure he performed property management duties properly, Taylor did not receive property management training, pertinent officials did not receive any notice of property loss, inaccurate paperwork may have impeded Taylor's ability to properly manage the property, and the government did not suffer any real financial loss.  (*Id.* at 1-2).

On July 28, 2020, Lieutenant Colonel Tangela Robinson, Senior Contracts Manager, issued a "Notice of Proposed Management Directed Reassignment (MDR)" vis-a-vis Taylor.  (Doc. 33-18).  Robinson proposed reassigning Taylor from the position of Supervisory Management Analyst in the Business Management Directorate of the Combined Staff Division to the position of Branch Chief, Strategic Planning

Officer, Mission Support Directorate in the Strategic & Operations Support Branch, effective September 13, 2020.

> The reason for this action is a combination of critical mission requirements as well as the results of the recently completed AR 15-6 and FLIPL[4] as to the property book deficiencies while under your supervision such as (i) the lack of property (a) sub-hand receipting; (b) accountability documentation; an [sic] (c) auditable trail for loss-prevention; and (ii) under reporting the quantity of excess property on hand between December 2018 through May 2019.

(*Id.* at 1). Robinson informed Taylor the reassignment would "not result in any pay reduction, grade change or Redstone Arsenal duty location," and Daniel Cottrell, Division Chief, CIO/CONOPS Division would serve as Taylor's rater. (*Id.*). Robinson attested she reached the decision to reassign Taylor based upon the findings of the lost property investigation. (Doc. 33-19, at 5).

On August 4, 2020, Taylor acknowledged receipt of Robinson's July 28, 2020, memorandum. On August 13, 2020, he checked a box on the Memorandum form, acknowledging: "I concur and will accept the Management Directed Reassignment." (Doc. 33-18, at 2).

---

[4] "AR 15-6 refers to Army Regulation 15-6, which provides authority for and establishes procedures for Army administrative investigations." (Doc. 34, at 8). "FLIPL" stands for "Financial Liability Investigations of Property Loss," which represent "a method through which the Army can investigate and account for the circumstances surrounding the loss, damage, or destruction of government property." (*Id.* at 9; *see also* Doc. 33-16, at 1).

## III.   FACTS RELATED TO TAYLOR'S REQUEST FOR RESTORED ANNUAL LEAVE

Taylor requested four weeks of annual leave during November and December 2022. His requested leave constituted "use-or-lose" leave: any leave balance would not roll over into the following calendar year. However, Taylor's supervisor required him to work 68 hours during the leave period he requested, leaving Taylor with 68 hours of use-or-lose leave at the end of 2022. During the first week of January 2023, Taylor asked his supervisor to restore the 68 hours of leave so he could use it during 2023. His supervisor granted that request during either November or December of 2023. (Doc. 33-20, at 7-8).

## DISCUSSION

## I.   TAYLOR CANNOT PROCEED UNDER 42 U.S.C. § 1981 AS HE SUES ONLY FEDERAL DEFENDANTS.

As discussed, Taylor asserts three causes of action (Counts 2, 4, and 6) pursuant to 42 U.S.C. § 1981. That statute grants

> [a]ll persons within the jurisdiction of the United States . . . the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). However, its protections extend only to "nongovernmental discrimination and impairment under color of State law." *Id.* § 1981(c). The Eleventh Circuit has "long held that 'the United States has not waived its immunity to suit under'

§ 1981," and the statute "'does not provide a cause of action for discrimination under color of federal law.'"  *Johnson v. U.S. Sec'y of Army*, No. 23-10454, 2024 WL 304006, at *1 (11th Cir. Jan. 26, 2024) (citing *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998)).  As Taylor sues only the Department of the Army and the Secretary of the Army, both of whom constitute federal defendants, the court will grant summary judgment on his 42 U.S.C. § 1981 claims.[5]

## II.  DEFENDANTS WARRANT SUMMARY JUDGMENT ON ALL OF TAYLOR'S TITLE VII CLAIMS.

### A.  The Department of the Army Does Not Constitute a Proper Defendant in This Action.

Taylor named both the Department of the Army and the Secretary of the Army as Defendants in this action.  The federal sector provision of Title VII permits an aggrieved employee to file a civil action against "the head of the department, agency, or unit, as appropriate."  42 U.S.C. § 2000e-16(c); *see also Glover v. Donahoe*, 626 F. App'x 926, 931 (11th Cir. 2015) (citing *Canino v. United States EEOC*, 707 F.2d 468, 472 (11th Cir. 1983) ("[C]laims under Title VII for employment discrimination and retaliation may

---

[5] Taylor asserts "the question of whether Section 1981 protections extend to federal employment remains a contested and increasingly relevant issue in the pursuit of workplace equity and justice." (Doc. 40, at 40-41).  However, he cites no authority to support his position, and the court cannot contravene the clear statutory language and Eleventh Circuit precedent providing the statute does not apply to federal employers.

be brought only against the head of an agency in his official capacity.")).  Accordingly,
only the Secretary of the Army, not the Department of the Army, constitutes a proper
defendant in this action.    *See McCluney v. Geren*, No. 1:08-CV-01097-HGD, 2010 WL
11615032, at *11 (N.D. Ala. Sept. 15, 2010) (citing *Canino*, 707 F.2d. at 472; *Mays v. U.S.
Postal Serv.*, 928 F. Supp 1552, 1564 (M.D. Ala. 1996)) ("[T]he Anniston Army Depot is
not a proper defendant because only the head of an agency is an appropriate defendant
in a Title VII action brought by a federal employee who alleges employment
discrimination. . . .  Thus, the only remaining claims are plaintiffs' Title VII claims
against the Secretary of the Army."); *Kelsey v. Dep't of Air Force*, No. 09-21125-CIV, 2009
WL 10668144, at *2 (S.D. Fla. July 20, 2009) ("[T]he Court finds that Defendant Robert
Gates, who is the Secretary of Defense, and Defendant Air Force should be dismissed
as improper defendants, considering that Plaintiff has also named the Secretary of the
Air Force as a defendant.").  The court will grant summary judgment on all claims
against the Department of the Army.[6]

---

[6] Taylor argues the court "should permit substitution of the proper party, the Secretary of the Army,
rather than penalize the Plaintiff for a correctable procedural defect." (*Id.* at 71).  However, the
circumstances do not require a substitution, as Taylor already named the Secretary of the Army as a
defendant.  Accordingly, the court will dismiss all Title VII claims against the Department of the
Army, but it will proceed to consider the merits of the Title VII claims against the Secretary of the
Army.

**B.    Res Judicata Bars Any Claims Regarding the Denial of Adequate Resources Prior to September 3, 2019, or Based Upon Taylor's September 3, 2019, Reassignment.**

To the extent Taylor asserts any race discrimination or retaliation claims regarding either the Army's alleged denial of adequate human resources prior to September 3, 2019, or his September 3, 2019, reassignment from a Supervisory Management Analyst position to a Strategic Planning Officer position, the doctrine of res judicata bars the claims.  "Res judicata prevents plaintiffs from bringing claims related to prior decisions when the prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action." *Milner v. Baptist Health Montgomery*, 132 F.4th 1354, 1357 (11th Cir. 2025) (citations omitted).

This court, which possessed competent jurisdiction, entered a memorandum opinion and final judgment on July 8, 2024, in Civil Action No. 5:22-cv-01350-HNJ, dismissing Taylor's claims alleging 1) the Army denied him adequate human resources based on his race, and 2) the September 3, 2019, reassignment resulted from either race discrimination or retaliation.  Taylor attempts to raise those same allegations as discrimination claims in this action.  And that Taylor named the Department of the Army as a defendant in this action, yet not in the prior action (No. 5:22-cv-01350-HNJ), bears no pertinent distinction.  As previously discussed, the Department of the Army does not constitute a proper Defendant to this action.  Moreover, even if Taylor's claims

could proceed against the Department of the Army, the Department maintains privity with the Secretary of the Army, whom Taylor named as a Defendant in both actions. *See Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1083 (11th Cir. 2022) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (Res judicata applies "'when the parties, *or those in privity with them*, are identical in both suits.'")) (emphasis added); *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1328 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2701, 221 L. Ed. 2d 966 (2025) (quoting *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.7 (11th Cir. 2013) ("[G]enerally, a government official sued in his or her official capacity is considered to be in privity with the government, but a government official sued in his or her individual capacity is not.")).

Accordingly, the court will not consider any claims regarding the denial of adequate resources prior to September 3, 2019, or based upon Taylor's September 3, 2019, reassignment. Even so, the court may consider some facts related to those barred claims to the extent they serve as background information for other claims. *See Kaplan v. Regions Bank*, No. 8:17-CV-02701-CEH-CPT, 2018 WL 3642576, at *3 (M.D. Fla. Aug. 1, 2018) ("[R]*es judicata* applies to claims, not allegations. Defendants have not cited any law to support a bar on factual allegations that may relate to barred claims."); *Pendley v. Colvin*, No. 5:15-CV-01612-JEO, 2017 WL 476556, at *14 (N.D. Ala. Feb. 6, 2017) ("As to the Commissioner's argument that res judicata precludes consideration of the evidence from Drs. Clark and Miller, the court agrees in part. To the extent there

has been a 'previous determination or decision . . . about [Plaintiff's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision [had] become final by either administrative or judicial action,' it is not reviewable. . . . However, to the extent that information is relevant background information on the new application for a different period, it should be considered in determining and assessing Plaintiff's medical history for determining her disability, if any, for a subsequent time.") (alterations in original); *Thornton v. Wolpoff & Abramson, L.L.P.*, No. 1:07-CV-1384-RWS-GGB, 2007 WL 9710423, at *3 (N.D. Ga. Nov. 9, 2007), *report and recommendation adopted*, No. 1:07-CV-1384-RWS, 2007 WL 9710444 (N.D. Ga. Dec. 6, 2007) ("The complaint recites facts that relate to events that took place prior to the filing of the first action and that describe the first action.  However, these are merely background facts, and they do not render the action barred by the doctrines of *res judicata* or collateral estoppel because plaintiff does not seek to rely on them as a basis for her present claims.").

**C.    No Reasonable Jury May Find in Taylor's Favor as to His Title VII Claims for Retaliation and Race Discrimination Against the Secretary of the Army.**

Title VII protects federal employees from discrimination by providing that "[a]ll personnel actions affecting employees or applicants for employment ... in executive agencies . . . shall be made free from any discrimination based on race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-16(a).[7]  The statute's prohibition against discrimination also engenders protection against retaliation, whereby an employer has subjected an employee to adverse treatment for engaging in conduct protected under Title VII.  *See Rosado v. Secretary, Dep't of the Navy*, 127 F.4th 858, 876 (11th Cir. 2025) (citing *Buckley v. Secretary of the Army*, 97 F.4th 784, 798 (11th Cir. 2024)); *see also generally* 42 U.S.C. § 2000e-3(a) (Title VII's anti-retaliation provision applicable to private sector employment).[8]

> "[T]he 'free from any discrimination' language means that personnel actions must be made in 'a way that is not tainted by differential treatment based on' a protected characteristic[ or protected activity]." *Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1199 (11th Cir. 2021) ("*Babb II*") (quoting *Babb v. Wilkie*, 589 U.S. 399, 406, 140 S. Ct. 1168, 206 L. Ed. 2d 432 (2020) ("*Babb I*")). So "a federal employer violates [Title VII] if it allows race [or national-origin] discrimination to contribute to any personnel action," even if that discrimination was not the but-for cause of the ultimate decision. *Buckley*, 97 F.4th at 793.

---

[7] "By contrast, Title VII's private-sector provision prohibits employment actions against an employee 'because of such individual's race, . . . national origin,' or other protected characteristic." *Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1351 n.1 (11th Cir. 2024) (quoting 42 U.S.C. § 2000e-2(a)(1)).

[8] Courts and parties sometimes refer to retaliation claims as claims for "reprisal."  *See Balbuena v. McHugh*, No. CV-14-0188-KD-C, 2015 WL 6433258, at *6 n.5 (S.D. Ala. Sept. 24, 2015), *report and recommendation adopted*, 2015 WL 6394514 (S.D. Ala. Oct. 22, 2015); *Perryman v. West*, 949 F. Supp. 815, 818 (M.D. Ala. 1996); https://www.eeoc.gov/laws/guidance/retaliationreprisal-brochure ("Retaliation (a.k.a. 'reprisal') means treating employees badly because they complained about discrimination on the job, filed a discrimination charge or complaint, or participated in any manner in an employment discrimination proceeding.").  Any of Taylor's claims referring to "reprisal" thus rest upon the same theory of liability as his claims for "retaliation," *i.e.*, that the Secretary subjected him to adverse treatment because he engaged in statutorily protected activity.  *See Balbuena*, 2015 WL 6433258, at *6 n.5; *Perryman*, 949 F. Supp. at 818.

*Terrell v. Sec'y, Dep't of Veterans Affs.*, 98 F.4th 1343, 1351-52 (11th Cir. 2024) (third and fourth alterations in original); *see also id.* at 1352 (citing *Babb II,* 992 F.3d at 1199) (A federal employee "can substantiate a Title VII violation if []he shows that . . . discrimination[ or retaliation] 'tainted' the hiring process, even if it was not the but-for cause of [his] non-selection.").

The Eleventh Circuit maintains that the full *McDonnell-Douglas* burden-shifting framework used to assess circumstantial evidence in Title VII discrimination and retaliation suits brought by private-sector plaintiffs does not "continue[] to make sense in *Babb I* and *Babb II*'s wake." *Buckley,* 97 F.4th at 794. As the Court explained, *McDonnell-Douglas* requires a plaintiff to establish a *prima facie* case of discrimination or retaliation, then shifts the burden to the employer to provide a legitimate, non-discriminatory or non-retaliatory reason for the employment decision, and then shifts the burden back to the employee to establish the employer's proffered reason constituted a mere pretext for discrimination or retaliation. As such, "under the *McDonnell-Douglas* framework, the plaintiff bears the ultimate burden to show that discrimination [or retaliation] was the but-for cause of her employer's adverse personnel action." *Id.*

As federal employees do not need to establish but-for causation to press a claim for discrimination or retaliation, requiring them to satisfy *McDonnell-Douglas* would force "the plaintiff to move a boulder when []he need only push a pebble . . ." *Id.* Rather, a

court adjudicating a federal employee's discrimination or retaliation claim must "simply assess whether [the employee] has proffered evidence that [his protected characteristic or protected activity] 'play[ed] *any* part' in the [Defendant's] decision-making process." *Id.* at 795 (citing *Babb I*, 589 U.S. at 406) (third alteration and emphasis in original).[9]

> That said, if a federal employee wishes to satisfy his burden to show that retaliation tainted his employer's action by satisfying the *McDonnell Douglas* three-step framework, he may do so. Proving more than necessary to survive summary judgment on a claim of unlawful retaliation obviously proves enough to survive summary judgment on a claim of unlawful retaliation.

*Rosado*, 127 F.4th at 876.

    1.    <ins>No Reasonable Jury May Find in Taylor's Favor as to the Retaliation Claims</ins>.

If an aggrieved federal employee endeavors to prove his retaliation claim through use of the *McDonnell-Douglas* framework, he generally must demonstrate a genuine

---

[9] Even if a plaintiff satisfies that standard, he "is not necessarily entitled to all remedies under § 2000e-16(a)," as statutory "'relief must redress' the precise injury that the alleged discrimination 'inflicted.'"). *Terrell*, 98 F.4th at 1352 (citing *Buckley v. Sec'y of Army*, 97 F.4th 784, 794 (11th Cir. 2024)).

> Specifically, if [the plaintiff] proves that race or national-origin discrimination [or retaliation] was (or [all] were) a but-for cause or causes of [his] non-selection, []he may be entitled to retrospective relief, like compensatory damages and back pay. *See* [*Buckley,* 97 F.4th at 794]. On the other hand, if [he] proves only that discrimination [or retaliation] "tainted" the hiring process but not that it was a but-for cause of [his] non-selection, []he is not entitled to damages stemming from [his] non-selection. Rather, the court "begin[s] by considering injunctive or other forward-looking relief." *Id.* (internal quotation marks omitted) (quoting [*Babb v. Sec'y, Dep't of Veterans Affs.*, 992 F.3d 1193, 1205 n.8 (11th Cir. 2021) ("*Babb II*")].

*Terrell*, 98 F.4th at 1352 (penultimate alteration in original).

dispute of material fact as to the following elements: (1) he engaged "in an activity that Title VII protects"; (2) he "suffered an adverse personnel action"; and (3) retaliation "'played *any* part' in the … decision-making process" that yielded the personnel action. *Buckley*, 97 F.4th at 798 (quoting *Babb I*, 589 U.S. at 406) (emphasis in *Buckley*, brackets omitted)).  Establishing that *prima facie* case, the first step in the *McDonnell-Douglas* framework, "defeats summary judgment on a federal employee's retaliation claim." *Rosado,* 127 F.4th at 876.  If the aggrieved employee does not proceed through the *McDonnell Douglas* framework, he must "establish that retaliation somehow figured into the process that led to the final decision."  *Id.* (citing *Buckley*, 97 F.4th at 798).

The Army does not dispute that Taylor engaged in protected activity.  Indeed, Taylor filed a formal complaint of discrimination with the Army's EEO office on November 20, 2019.  He initiated a separate contact with the EEO office on August 8, 2020, and on October 5, 2020, he filed a second formal complaint of discrimination. On October 21, 2022, he filed Civil Action No. 5:22-cv-01350-HNJ.

However, the Army disputes Taylor satisfied the other elements of the *prima facie* case, or otherwise provided evidence of retaliation, as to the challenged personnel actions.

> (a) *No evidence exists retaliation tainted Taylor's non-selection for the Supervisory Logistics Management Specialist position.*

Taylor's Title VII claims in this case refer to his non-selection for an unspecified

26

"position." (Doc. 1, ¶¶ 39, 53, 67).  However, from Taylor's EEO complaints, the court understands Taylor challenges his non-selection on August 5, 2020, for the Supervisory Logistics Management Specialist position.  (*See* Doc. 33-23, at 1 (accepting Taylor's complaint that "on 05 August 2020, he was not selected for the position of Supervisory Logistics Management Specialist"); Doc. 1, at 28 (addressing claims that "on August 5, 2020, [Taylor] was not selected for the position of Supervisory Logistics Management Specialist")).

The Army does not dispute Taylor's non-selection for the position constituted an adverse personnel action.  *See Babb I*, 589 U.S. at 405 (citing 5 U.S.C. § 2302(a)(2)(A)) ("The Civil Service Reform Act of 1978, which governs federal employment, broadly defines a 'personnel action' to include most employment-related decisions, such as appointment, promotion, work assignment, compensation, and performance reviews.").  However, the Army argues Taylor produces no evidence retaliation played a part in the selection decision.  *See Babb III*, 2025 WL 1767957 at *6; *Buckley*, 97 F.4th at 795; *see also Rosado*, 127 F.4th at 865-67 & n.5; *Terrell*, 98 F.4th at 1352.

For Title VII claims in the federal employee context, the inquiry regarding the third element of the prima facie standard approximates an assessment pursuant to the "convincing mosaic" analysis.  *See Marshall v. Secretary of the Navy*, No. 24-12910, 2025 WL 1733680, at *3 (11th Cir. June 23, 2025); *Lewis v. Secretary of U.S. Air Force*, No. 20-12463, 2022 WL 2377164, at *9 (11th Cir. June 30, 2022); *Troupe v. DeJoy*, 861 F. App'x

291, 294 (11th Cir. 2021); *Taylor v. Wormuth*, No. 5:22-cv-01350-HNJ, 2024 WL 3333034, at *10 (July 8, 2024); *see also Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1240 (11th Cir. 2016). Thus, a plaintiff may "survive summary judgment if [he] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory [or retaliatory] intent." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (*en banc*) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). That is, circumstantial evidence may form a "convincing mosaic . . . that would allow a jury to infer intentional discrimination." *Id.* (quoting *Smith*, 644 F.3d at 1328). Examples of such evidence might include "(1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) [evidence] the employer's justification is pretextual." *Id.* (cleaned up).[10]

Taylor's non-selection for the Supervisory Logistics Management Specialist position on August 5, 2020, occurred approximately 8.5 months after his most recent protected activity, the EEO Complaint he filed on November 20, 2019. Those circumstances, standing alone, do not warrant an inference of causation based upon

---

[10] These principles apply to retaliation claims as well as to discrimination claims. *See Buckley,* 97 F.4th at 798; *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021); *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).

temporal proximity.  *See Hitt v. CSX Transp., Inc.*, 116 F.4th 1309, 1317 (11th Cir. 2024) (Though "[t]he burden of causation [as an element of the prima facie case] can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action, . . . mere temporal proximity, without more, must be very close.") (cleaned up); *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1328 (11th Cir. 2020) (temporal proximity of less than two months did not, by itself, establish pretext); *Wascura v. City of South Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001) (a three and one-half month period between the employee's protected conduct and her termination did not, standing alone, demonstrate pretext).

In addition, the selection panel for the Supervisory Logistics Management Specialist position based its decision on its combined rating of the interviewed applicants' resume and interview scores according to specified rubrics.  The panel members testified the panel did not select Taylor for the position because he received the lowest combined resume and interview scores.  Taylor's low interview score – which the panel assessed according to a pre-set rubric and justified by reference to Taylor's provision of limited examples and hard-to-follow, disorganized responses – constituted 65% of Taylor's total score.  An employment decision based upon deficient interview responses, or on relatively low scores in a structured interview process,[11] does not raise

---

[11] "Structured interviews are where each candidate is asked the same questions, with limited follow up questions. They are designed to promote a non-discriminatory search by providing each candidate an

an inference of retaliation. *See Denham v. Alabama State Univ.*, No. 23-12439, 2024 WL 2200545, at *4 (11th Cir. May 16, 2024) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1033 (11th Cir. 2000) (en banc); *Bass v. Board of County Comm'rs*, 256 F.3d 1095, 1106 (11th Cir. 2001), *overruled on other grounds by Crawford v. Carroll,* 529 F.3d 961, 971 (11th Cir. 2008)) ("[A] subjective reason for an employer's decision, such as a candidate's poor interview performance, can be a legitimate, nondiscriminatory reason," as long as the employer provides "a clear and reasonably specific factual basis supporting its subjective opinion."); *Brazzill v. Jefferson Cnty. Comm'n*, No. 2:08-CV-1920-AKK, 2010 WL 11565031, at *6 (N.D. Ala. May 28, 2010) (citing *Gary v. Hale*, 212 F. App'x 952, 959 (11th Cir. 2007) (per curiam)) ("[D]efendant used the same procedure for all employees it interviewed, making it difficult for plaintiff to claim the process discriminated specifically against him.").

Only three of the four panel members – Armer, McDonald, and Hunter – participated in rating applicants and administering interviews. Each of those three panel members testified they did not know of Taylor's prior protected activity when they rated Taylor's resume and interview. (Doc. 33-13, at 2-4; Doc. 33-14, at 2, 4; Doc. 33-15, at 2-4). Stephen Hayes, the Selecting Official, also did not know of Taylor's protected

---

equal opportunity to show how his or her skills fit the requirements for the vacant position." *Drakeford v. Alabama Co-op. Extension Sys.*, 416 F. Supp. 2d 1286, 1295 n.6 (M.D. Ala.), *opinion adhered to on reconsideration,* 425 F. Supp. 2d 1274 (M.D. Ala. 2006).

activity.  No inference of retaliation arises if the decisonmakers did not know of the aggrieved employee's protected activity.  *See Copeland v. Georgia Dep't of Corr.*, 97 F.4th 766, 783 n.9 (11th Cir. 2024) (citing *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023)) ("Given that Copeland could not identify the decisionmakers who decided not to promote him and had no evidence about whether those decisionmakers knew of his protected conduct, we cannot say that he came forward with sufficient evidence to survive summary judgment under a convincing-mosaic theory.").

Taylor believes he did not receive the Supervisory Logistics Management Specialist position because the Army did not provide him adequate resources in his previous position, and because the Army decided not to award him the position before the hiring process even started.  (Doc. 33-20, at 6).  However, the level of resources Taylor received in his previous position had no bearing on his non-selection for Supervisory Logistics Management Specialist as the selection panel based its decision on the structured, weighted interview process.[12]  Furthermore, Taylor proffers no evidence the selection panel decided against him from the outset, nor does he offer any other evidence to call into question the impartiality of the panel's decision.  Indeed, the panel's selection of Taylor as one of seven applicants (out of 62) to receive an interview indicates the panel evaluated Taylor's candidacy on its merits.

---

[12] Moreover, as previously discussed, *res judicata* bars Taylor from pursuing any direct claims based upon the provision of inadequate resources prior to September 3, 2019.

Taylor contends "significant inconsistencies in the statements of the panel members who participated in the selection process" demonstrate pretext. Specifically, Taylor argues that though

> Lynda Armer claimed that a consensus among the panel members . . . determined the interview scores and influenced the selection, . . . both Vincent Hunter and Phillip McDonald testified that their involvement was limited to submitting interview scores to the panel lead and that they were unaware of the candidates referred to the selecting official or the final selection outcome.

(Doc. 40, at 8-9).

The record evidence does not depict such an inconsistency. Armer attested she did not know which candidate the panel lead ultimately recommended to the selecting official, as she "was not part of the reference checks," "didn't see the final document or the overall scoring between resumes and interviews," and knew "what [her] resume scoring was and what the consensus on the interviews was only." (Doc. 33-13, at 7). Each panel member attested they did not make the final selection decision or know which candidate received the position. (*Id.* at 9; Doc. 33-14, at 6; Doc. 33-15, at 6-7).

Taylor also asserts the decisionmakers for the Supervisory Logistics Management Specialist position disregarded his "qualifications and suitability for the position," and they failed "to adhere to established protocols." (Doc. 40, at 14). However, no evidence exists the panel members deviated from the structured interview protocols, and they recognized Taylor's qualifications by rating his resume highly enough to place

32

him among the top seven candidates who received an interview.  As Eleventh Circuit authority portrays, a plaintiff's belief "in the superiority of his qualifications – that his seniority and experience should trump his poor performance [in a selection process] – is not determinative," as "in reviewing a Title VII plaintiff's qualifications, we focus on the employer's requirements and do not second-guess the employer's business judgment." *Turner v. City of Auburn*, 361 F. App'x 62, 65 (11th Cir. 2010) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997)).

Taylor also contends "[s]tatements or actions suggesting resentment toward [his] advocacy for workplace equity serve as critical indicators of unlawful retaliation." (Doc. 40, at 13).  However, he does not offer evidence of any such statements.  In particular, he does not offer evidence any of the decisionmakers for the Supervisory Logistics Management Specialist position uttered such statements, or any evidence (or argument) that a non-decisionmaker's retaliatory animus should be imputed to the decisionmaker under a "cat's paw" theory.  *See Crawford v. Carroll*, 529 F.3d 961, 979 n.19 (11th Cir. 2008) (citing *Llampallas v. Mini-Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir. 1998)) ("Under a 'cat's paw' theory, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct."); *Shannon v. Nat'l R.R. Passenger Corp.*, 774 F. App'x 529, 542 (11th Cir. 2019) (rejecting a race discrimination claim when the plaintiff "did not point to any evidence that these decisionmakers harbored any

racial animus or selected candidates based on race"); *Hammett v. Sec'y, Dep't of Homeland Sec.*, 488 F. App'x 405, 406 (11th Cir. 2012) (recognizing a plaintiff may bring "retaliation claims under both a traditional approach (where the decisionmaker is motivated by a retaliatory animus) and under a 'cat's paw' approach (where the decisionmaker is not motivated by a retaliatory animus but is influenced by a non-decisionmaker who is so motivated)").

Finally, Taylor asserts his September 3, 2019, reassignment from a Supervisory Management Analyst position to a Strategic Planning Officer position constitutes evidence of a retaliatory motive because it evinced "a larger pattern of retaliatory behavior against" him, including "decisions by [his] supervisor to withhold necessary resources for [his] branch, propose its dismantling, and engineer further transfers to marginalize [him]." (Doc. 40, at 12). Moreover, the Army's actions allegedly "deviated from established norms and protocols, further casting doubt on the legitimacy of their stated reasons." (*Id.*). According to Taylor, "at least 14 Caucasian white employees under investigation . . . were not moved. On the other hand, many Black and Brown skinned individuals were moved." (*Id.* at 12-13).

A plaintiff may create a jury question based upon evidence the defendant engaged in a "pattern of antagonism" following protected activity, even when temporal proximity does not exist between the plaintiff's protected activity and the adverse employment action. *See Jones v. Suburban Propane, Inc.*, 577 F. App'x 951, 955 (11th Cir.

34

2014) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997)); *see also Maniccia v. Brown*, 171 F.3d 1364, 1370 (11th Cir. 1999), *abrogated on other grounds by Lewis v. City of Union City, Ga.,* 918 F.3d 1213 (11th Cir. 2019) (similarly suggesting in dicta that a "pattern of retaliatory activity" may show causation); *see also* Barbara T. Lindemann & Paul Grossman, EMPLOYMENT DISCRIMINATION LAW § 15.IV.D.2 (7th ed. 2023) ("[W]ith a pattern or atmosphere of hostility or animosity in the workplace, or other evidence suggesting retaliation, temporal proximity may strengthen the retaliatory inference, and even a substantial lapse of time may fail to dispel that inference.");[13] EEOC Enforcement Guidance on Retaliation and Related Issues,

---

[13] *Citing, George v. Youngstown State Univ.*, 966 F.3d 446, 460-61 (6th Cir. 2020) (9-year gap between employee's lawsuit and termination does not preclude inference of causation where employee was fired almost immediately after terms of parties' settlement agreement expired); *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 616 (6th Cir. 2019) (8-month gap between protected activity and adverse action helped to establish causation based on testimony by supervisor, who admitted transferring plaintiff because of "gender complaint" and better treatment of similarly situated employee); *Stepp v. Covance Cent. Lab. Servs., Inc.*, 931 F.3d 632, 635-36 (7th Cir. 2019) (gap of several weeks between filing of EEOC charge and employer's refusal to make plaintiff permanent employee, combined with evidence of better treatment of comparable coworkers, and employer's proffered reason being "unworthy of credence" sufficient to show causal connection); *Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 218-23 (1st Cir. 2016) (4-month gap between complaint and termination, coupled with fact that employer began to collect information on plaintiff's performance only after she complained of sexual harassment, sufficient to establish fact dispute that termination reason may have been pretextual); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) (given seasonal character of her work, female truck driver's retaliation claim should not have been dismissed for failing to plead causal connection between her sexual harassment complaint and employer's failure to rehire her almost 1 year later, given other evidence of retaliatory animus); *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 431 (2d Cir. 2016) (where just more than 3 months lapsed between initial protected leave and termination, "[t]he weakness of the evidence supporting the defendant's explanation … would then permit the conclusion that defendants' decision to fire [plaintiff] arose not from her 'abandonment' of her position but from her much-contested attempt to take FMLA leave"); *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 869 (7th Cir. 2013) (circumstantial evidence, consisting of suspicious timing, ambiguous statements by decision makers, and other "bits and pieces of evidence" from which

available at https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues#_ftnref164 (citing, *inter alia*, *Goldsmith v. Babgy Elevator Co.*, 513 F.3d

retaliatory motive might be drawn, was sufficient to establish causation); *Heaton v. Weitz Co.*, 534 F.3d 882, 888 (8th Cir. 2008) (jury properly inferred that, although 6 months had passed between protected activity and firing, intervening acts demonstrated retaliatory motive); *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 304 (3d Cir. 2007) (plaintiff's proof that his computer was vandalized, he was excluded from important meeting, and that his supervisor looked at him with disgust established causal link between complaints and adverse action, despite 9-month gap); *Poland v. Chertoff*, 494 F.3d 1174, 1180-81 (9th Cir. 2007) (plaintiff's proof that volume of investigative reports focused on plaintiff increased after she made discrimination claim established causal link between her complaint and adverse actions); *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 619 (4th Cir. 2007) (plaintiff's evidence that company president said "I'm not going to have any lawsuits on my watch," that vice-president expressed hope that placing plaintiff under supervision would encourage her to resign, and warning to co-worker that if she filed EEOC charge she would "end up like [plaintiff]" sufficient to establish causal link between plaintiff's complaint and her discharge, despite gap of more than 1 year); *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650-51 (4th Cir. 2007) (although 7 months passed between discrimination complaint and termination, plaintiff showed numerous intervening adverse actions, including stripping plaintiff of supervisory responsibilities); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (reversing summary judgment for employer; "[T]he type of evidence that can be considered probative of [a] causal link … is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, [causation can be inferred from] other evidence gleaned from the record as a whole. … '[i]t is important to emphasize that it is causation, not temporal proximity [or evidence of antagonism], that is an element of plaintiff's *prima facie* case, and temporal proximity [or antagonism] merely provides an evidentiary basis from which an inference can be drawn.'"); *Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1014 (7th Cir. 1997) (reversing summary judgment; "pattern of criticism and animosity" by plaintiff's supervisors began shortly after she complained of discrimination); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920-21 (3d Cir. 1996) (2-year period between complaint and discharge not conclusive proof that retaliation did not motivate plaintiff's discharge; "pattern of antagonism" in meantime could lead to finding of retaliation); *Harrison v. Metropolitan Gov't*, 80 F.3d 1107, 1119 (6th Cir. 1996), *overruled on other grounds by Jackson v. Quanex Corp.*, 119 F.3d 647 (6th Cir. 1999) (period of at most 15 months between filing of charge and plaintiff's discharge not too long to defeat causal connection; temporal connection bolstered by evidence that plaintiff's supervisor made repeated comments that suggested he would not hesitate to run employees out of department; evidence of "atmosphere in which the plaintiff's activities were scrutinized more carefully than those of comparably situated employees," both Black and White, although insufficient to establish harassment, supported finding of retaliation); *see also* EEOC Enforcement Guidance on Retaliation and Related Issues, https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues (Aug. 25, 2016) (even if time period between protected activity and adverse action is long, employee still may establish retaliation claim if there is other evidence that raises inference of retaliation (such as frequent comments during that period about protected activity)).

1261, 1278 (11th Cir. 2008) ("[T]emporal proximity is not necessary to establish a causal link. https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues_-_ftn163. Even when the time between the protected activity and the adverse action is lengthy, other evidence of retaliatory motive may establish the causal link. For example, actions related to the continued processing of a complaint may remind an employer of its pendency or stoke an employer's animus. Moreover, an opportunity to engage in a retaliatory act may not arise right away. In these circumstances, a materially adverse action might occur long after the original protected activity occurs, and retaliatory motive is nevertheless proven.").

However, Taylor has not presented evidence of a pattern of retaliatory conduct occurring after his protected activity. *See Kachmar,* 109 F.3d at 177 (evidence of a "pattern of antagonism" *following the protected activity* may give rise to the inference of causation). He has repeatedly complained of retaliation, but he offers no evidence of either past retaliation or a finding of retaliation by any administrative or judicial entity. *See Burgen v. Pine Enters. LLC*, No. 22-13519, 2023 WL 6486476, at *3 (11th Cir. Oct. 5, 2023) (citing *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018)) ("[A] lack of evidence in support of speculation cannot establish pretext for retaliation."); *Philpot v. Blue Cross Blue Shield of Georgia*, No. 1:07-CV-0657-RWS-LTW, 2008 WL 11407269, at *12 (N.D. Ga. July 14, 2008), *report and recommendation adopted*, No. 1:07-CV-0657-RWS, 2008 WL 11407343 (N.D. Ga. Aug. 29, 2008) (citing *Mayfield v. Patterson Pump Co.*, 101

37

F.3d 1371, 1376 (11th Cir. 1996); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989); *Sabatier v. Suntrust Bank*, No. 06-CV-20418, 2008 WL 108796, at *10 (S.D. Fla. Jan. 4, 2008), *aff'd,* 301 F. App'x 913 (11th Cir. 2008) ("A plaintiff's subjective belief and pure conjecture that she has been the victim of retaliation are insufficient to establish pretext.")).

Based upon the foregoing analysis, Taylor has not presented evidence that retaliatory animus tainted the decision not to select him for the Supervisory Logistics Management Specialist position on August 5, 2020.  The court will grant summary judgment in the Secretary's favor on that aspect of Taylor's retaliation claim.

> (b)    *Taylor did not exhaust administrative remedies as to his retaliation claim related to the delay in restoring his annual leave.*

Taylor also asserts Defendant's ten-to-eleven-month delay until November or December 2023 in restoring 68 days of annual leave resulted from retaliatory animus.

Taylor did not raise any claims regarding his restored annual leave during the EEO process.  (*See* Doc. 33-22; Doc. 33-23).  A federal employee must exhaust his or her administrative remedies prior to filing a lawsuit under Title VII.  *Hogan v. Sec'y, U.S. Dep't of Veterans Affs.*, 121 F.4th 172, 174 (11th Cir. 2024) ("EEOC regulations implementing Title VII prescribe a system of administrative remedies a federal employee must exhaust before bringing suit in federal court.").  Exhaustion of administrative remedies requires a federal employee to "initiate contact with a

Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).[14] "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies." *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (citing *Brown*, 440 F.3d at 1264-65, *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The district court must limit its review to claims in a plaintiff's complaint that are "like or related to, or grew out of, the allegations contained in the EEOC charge." *Jimenez v. U.S. Att'y Gen.*, 146 F.4th 972, 990 (11th Cir. 2025) (citing *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018); *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (*per curiam*)) (cleaned up). Though a plaintiff "may raise judicial claims that 'amplify, clarify, or more clearly focus the allegations in the EEOC complaint,'" the court should not consider "allegations of new acts of discrimination."

---

[14] An agency may extend the 45-day time limit if

> the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known [*sic*] that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

29 C.F.R. § 1614.105(a)(2). The record does not reveal Taylor bade the agency to extend his filing deadline, or that any circumstances existed to warrant an extension.

*Id.* (citing *Gregory*, 355 F.3d at 1279-80; *Batson*, 897 F.3d at 1327). "'The facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge; the legal theory the charging party articulates is far less important.'" *Id.* (quoting *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022)).

Taylor acknowledges he "did not explicitly include the delayed restoration of annual leave in his 2020 EEO charge," yet he asserts that "issue arises directly from the same retaliatory and discriminatory context detailed in his earlier complaints," and it serves as an example of "Defendant's continuing pattern of discriminatory and retaliatory behavior, which reasonably should have been included within the scope of the EEO investigation." (Doc. 40, at 20). However, Taylor's EEO complaint alleged the Army failed to select him for a former position, assigned him a lower-level position, and subjected him to a management-directed reassignment. Those facts differ completely from the delayed restoration of his annual leave. Alleging one act of discrimination or retaliation in a charge does not satisfy a plaintiff's exhaustion requirement as to all future acts of discrimination or retaliation. *See Jimenez*, 146 F.4th at 990 (citing *Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1568-69 (11th Cir. 1987) ("[L]anguage in a charge 'generally alleging discrimination' is not enough to exhaust a Title VII claim for a specific discriminatory act.")); *id.* (quoting *Batson*, 897 F.3d at 1328) ("Failing to pay bonuses and promote [the plaintiff] are not 'like or related to' the allegations of discriminatory augmentation duty assignments in his EEOC charges.").

40

Accordingly, the court finds Taylor failed to exhaust administrative remedies as to his claim for retaliation based upon the delay in restoring his annual leave.  The court will grant summary judgment in the Secretary's favor on this claim.[15]

>    (c)    *No evidence exists retaliation tainted the Army's decision to issue Taylor a management-directed reassignment.*

Taylor's October 5, 2020, EEO complaint alleged a claim based upon his July 28, 2020, management-directed reassignment to the position of Branch Chief, Strategic Planning Officer, Mission Support Directorate in the Strategic & Operations Support Branch.[16]  (Doc. 33-22, at 1).  The EEO office accepted and investigated that claim.  (Doc. 33-23, at 1).

The Army argues the court should not permit the claim to proceed because Taylor did not mention the claim in his Complaint.  (Doc. 34, at 30-31).  However, the Complaint avers at Paragraph 32 that Taylor "was moved from his office before the investigation started *and the decision was made not to put [Taylor] back in his position of record,*"

---

[15] Taylor's Complaint also avers "Defendant has retaliated against [him] by paying him less than any other supervisor within the organization and had him to work for over 8 days/64 hours without pay and or compensation after 10 months of reminders." (Doc. 1, ¶ 33).  To the extent that averment invokes a retaliation claim based upon conduct other than the delay in restoring his annual leave, the claim cannot proceed past summary judgment as Taylor did not exhaust administrative remedies as to the claim.

[16] Taylor's EEO Complaint stated the date of the management-directed reassignment as August 4, 2020.  However, the reassignment memorandum bears a date of July 28, 2020.  Taylor likely received the memorandum on August 4, 2020.  Regardless, the discrepancy in dates between July 28, 2020, and August 4, 2020, does not materially affect the outcome of the claim.

and those actions allegedly "serve[] as a pretext to discrimination." (Doc. 1, ¶ 32 (emphasis added)). A liberal construal of that averment – and particularly the highlighted language – could encompass a claim related not only to Taylor's temporary reassignment in September 2019, but also to the permanent reassignment directed on July 28, 2020, and enacted on September 12, 2020.[17] Moreover, Taylor attached to the Complaint a copy of the July 26, 2023, decision of the U.S. Equal Employment Opportunity Commission Office of Federal Operations, which found the claim related to the management-directed reassignment lacked merit as the Army based the reassignment on the findings of the property loss investigation, not on discrimination or retaliation. Accordingly, the court will proceed to assess the merits of the claim.

No evidence exists retaliation played a part in the decision to issue the management-directed reassignment. The management-directed reassignment letter issued on July 28, 2020; Taylor acknowledged receipt of the letter on August 4, 2020; and the assignment effectuated on September 13, 2020. Those events occurred more than eight months after Taylor's most recent protected activity, the November 20, 2019, EEO Complaint. Accordingly, the evidence does not warrant an inference of causation based solely upon temporal proximity. *See Hitt*, 116 F.4th at 1317; *Johnson*, 948 F.3d at

---

[17] The court must liberally construe Taylor's *pro se* pleadings, "holding them 'to a less stringent standard than pleadings drafted by attorneys.'" *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)).

1328; *Wascura*, 257 F.3d at 1244-45.

Moreover, as previously discussed, the temporary reassignment initiated on September 3, 2019, did not constitute evidence of a pattern of retaliatory conduct. And there exists no additional evidence of retaliatory motive arising between the initial September 3, 2019, decision, and the September 13, 2020, effectuation of the permanent reassignment. The Army offered a legitimate, non-retaliatory reason for finalizing the reassignment decision: the findings of the property loss investigation. Taylor has offered no evidence to call into question the authenticity of that explanation, and he has presented no other evidence retaliation tainted the management-directed reassignment decision.

As no evidence exists retaliation tainted the management-directed reassignment decision, the court will grant summary judgment in the Secretary's favor on this claim.

> ## 2. <u>No Genuine Disputes Exist as to Material Facts Related to Taylor's Race Discrimination Claims</u>.

>> ### (a) *No evidence exists that race discrimination tainted the non-selection of Taylor for the Supervisory Logistics Management Specialist position.*

As discussed, Armer, Hunter, and McDonald, the members of the Supervisory Logistics Management Specialist selection panel who voted on Taylor's resume and interview scores, did not know his race or skin color when they voted. (Doc. 33-13, at 2-4; Doc. 33-14, at 2, 4; Doc. 33-15, at 2-4). If a decisionmaker does not know a

candidate's race or skin color when rendering an employment decision, the decisionmaker cannot discriminate in that decision on the basis of race or color. *See Perry v. Pediatrix Med. Grp. of Georgia*, 841 F. App'x 174, 177 (11th Cir. 2021) (citing *Walker v. Prudential Prop. and Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002) ("Critically, Dr. Perry also had to show that the decisionmaker knew he was a member of a protected class.")); *Walker*, 286 F.3d at 1274 (citations omitted) ("'Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker.'"); *Labat v. Bd. of Trs. of Fla. A & M Univ.*, No. 4:05-CV-52-SPM/AK, 2005 WL 3693945, at *2 (N.D. Fla. Dec. 7, 2005) (citing *Dass v. Int'l Brotherhood of Teamsters,* 140 F. Supp. 2d 1304, 1310 (M.D. Fla. 2001) ("Mr. Labat acknowledges that in proving a *prima facie case,* he must show that Dr. Lee was aware that he was white.")).

Stephen Hayes, the Selecting Official for the Supervisory Logistics Management Specialist position, attested he bore responsibility for "approving the selection panel, approving panel members, concurring in selection of interview candidates based on resume evaluation results, developing/approving interview questions, and making the selection decision based upon total evaluation results." (Doc. 33-8, at 5). Hayes knew Taylor's race at the time of the selection decision. (*Id.* at 2-3). However, no other evidence exists Hayes based his decision on Taylor's race.

44

Hayes did not interview any candidates; rather, he relied upon the interviews and evaluations the panel members conducted. (Doc. 33-8, at 10). He selected Aaknes "based upon the combined results of the resume and interview evaluations conducted in accordance with the approved Selection Plan." (*Id.* at 10). He also considered information from corroborated reference checks and determined Aaknes presented "the best overall combination of qualifications based on the selection criteria and ha[d] the best potential to succeed in [the] position." (*Id.*). Hayes also attested:

> Mr. Aaknes' resume demonstrated extensive experience in all four resume sub-criteria (Facility Supply Inventory Management; Leadership; Supply Support; and Support Equipment). Mr. Aaknes's [sic] also provided well-organized, confident, clear and concise answers during his interview with highly thoughtful, logical, and relevant responses. Mr. Aaknes was the highest rated applicant based upon the combined results of the resume and interview evaluations, and was therefore selected as the best qualified candidate in accordance with the approved selection plan.

(*Id.* at 11). He attested neither race nor color played a role in his decision, as the decision "was based upon the combined evaluation of applicants' resumes and interviews in accordance with the criteria specified in the approved selection plan." (Doc. 33-8, at 11).

Taylor has offered no evidence to distrust Hayes's testimony, or to otherwise demonstrate race discrimination tainted the selection decision. Importantly, Hayes did not know the race of Dale Aaknes, the successful candidate, at the time of the decision. (*Id.* at 8 ("Mr. Aaknes is white (known after selection).")). This fact suggests Hayes did

not render his selection decision on the basis of race. *C.f.*, *Andrades v. Holder*, 939 F. Supp. 2d 11, 19 (D.D.C. 2013) ("First, as to the selectee's race, this might support an inference of discrimination but for the fact that, according to the Attorney General's unrebutted evidence, at the time Mr. Domenech decided to non-select Mr. Andrades, he did not know the identities of the three candidates who were in contention for the position through the competitive program."); *Woods v. Peters*, No. 4:05-CV-724-Y, 2007 WL 2729905, at *10 (N.D. Tex. Sept. 19, 2007) (considering that the decisionmaker "was unaware of the race or color of any of the candidates when she made her selections" when granting summary judgment in employer's favor); *Walker v. Dalton*, 94 F. Supp. 2d 8, 15-16 (D.D.C. 2000) (considering that the decisionmaker "did not know plaintiff, plaintiff's race, or the race of the eventual selectee" when granting summary judgment in employer's favor).

As Taylor cannot demonstrate race discrimination tainted the selection process for the Supervisory Logistics Management Specialist position, the court will grant summary judgment on his race discrimination claim based upon his non-selection for the position.[18]

---

[18] To the extent Taylor attempts to rely upon the *McDonnell Douglas* framework to establish a race discrimination claim based upon his non-selection for the Supervisory Logistics Management Specialist position, he cannot succeed. The Army articulated a legitimate, non-discriminatory reason for the selection decision, as other candidates scored higher than Taylor on the structured interview evaluation. Taylor cannot demonstrate that proffered reason constitutes a mere pretext for race discrimination. As discussed in connection with Taylor's retaliation claim for the Supervisory Logistics Management Specialist position, the level of resources Taylor received in his previous position did not

> (b)     *Taylor did not exhaust administrative remedies as to his race discrimination claim related to the delay in restoring his annual leave.*

As previously discussed regarding Taylor's retaliation claim, Taylor did not exhaust the required administrative remedies as to any claims based upon the delay in restoring his annual leave.  Accordingly, the court will grant summary judgment in the Secretary's favor on Taylor's race discrimination claim related to those actions.[19]

> (c)     *No evidence exists race discrimination tainted the Army's decision to issue Taylor a management-directed reassignment.*

As previously discussed, the Army offered a legitimate, non-discriminatory reason for issuing Taylor a management-directed reassignment:  the findings of the property loss investigation.  Taylor has offered no evidence to call into question the authenticity of that explanation, and he has presented no other evidence race discrimination tainted the management-directed reassignment decision.

As no evidence exists race discrimination tainted the management-directed reassignment decision, the court will grant summary judgment in the Secretary's favor

---

influence the selection for Supervisory Logistics Management Specialist, and no evidence exists the selection panel implemented a pre-determined decision, issued inconsistent statements, disregarded his qualifications, failed to adhere to established protocols, or uttered racially discriminatory statements.

[19] Taylor's Complaint also may include a claim for a race-based hostile work environment.  (*See* Doc. 1, ¶ 23 ("Plaintiff has been discriminated against on the basis of his race, African American, by being subjected to a racially hostile work environment with respect to the terms, conditions and benefits of his employment rights.").  To the extent the Complaint includes such a claim, it cannot proceed past summary judgment, as Taylor did not exhaust administrative remedies as to the claim.

on this claim.

## CONCLUSION

In accordance with the foregoing analyses, the court finds Taylor cannot proceed under 42 U.S.C. § 1981 as he sues only federal Defendants; the Department of the Army does not constitute a proper Defendant in this action; res judicata bars any claims based upon the denial of adequate resources prior to September 3, 2019, or upon Taylor's September 3, 2019, reassignment; and no genuine disputes exist as to material facts regarding Taylor's Title VII claims for retaliation and race discrimination. Accordingly, the court **GRANTS** Defendants' motion for summary judgment. (Doc. 34).

The court **DENIES** Taylor's "Motion to Deny Defendant's Summary Judgement Based on Defendant Misleading the Court Under Oath" (Doc. 40) and Taylor's "Motion Against Defendant Summary Judgment Motion Based on Genuine Issues of Material Facts." (Doc. 52). The court **GRANTS** Taylor's motion to file a supplemental pleading (Doc. 62), and it has considered Taylor's supplemental pleading in ruling on the other motions discussed herein.

The court will enter a separate Final Judgment.

**DONE** and **ORDERED** this 17th day of February, 2026.

_H. Johnson, Jr._
_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE